**FILED**

IN THE UNITED STATES DISTRICT COURT UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

FOR THE DISTRICT OF NEW MEXICO

SEP 1 4 2004

RAYMOND FLORES,

**CLERK**

Plaintiff,

v.                                                      CIV 02-979  BB/RHS

LESLIE JOHNSON, et al.,

Defendants.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

1. THIS MATTER comes before the Court upon Correction Department's Response to

Court Ordered Martinez Report, filed March 11, 2004, [Doc. No. 37] and Defendant Johnson's

Martinez Report, filed March 19, 2004. [Doc. No. 39 ]. Having considered the report, the

response, and the entire record, the Court recommends that summary judgment be granted to the

two remaining defendants in this case.

2. Plaintiff Raymond Flores brought this pro se, in forma pauperis civil rights action

under 42 U. S. C. § 1983, alleging that he was unlawfully detained and was denied access to the

courts during his illegal confinement and seeking damages and equitable relief against Eddy

County, Eddy County Manager Steve Massey, the Eddy County Board of Commissioners, the

City of Carlsbad, ECDC Administrator, Captain Leslie Johnson, New Mexico Parole Officer, Kay

Aubrey, and Gerald Garrett, the acting director of the Texas Parole Division.  Plaintiff's claims

against Eddy County, the Eddy County Board of Commissioners, the City of Carlsbad and

1

Defendant Garrett were dismissed on October 23, 2002 [Doc. No. 9] and Plaintiff's claims against

Steve Massey were dismissed on August 16, 2004.  [Doc. No. 51].

    3.  The Court ordered that Martinez Reports be submitted  addressing certain issues

relevant to the claims against Defendants Aubrey and Johnson, pursuant to <u>Martinez v Aaron</u>, 570

F. 2d 317, 320 ( 10th Cir. 1978). [Doc. No. 35]. The parties were notified that the Martinez

Report could be used in deciding whether to grant summary judgment on Plaintiff's claims, and

they were instructed to submit whatever materials they considered relevant to Plaintiff's claims.

Defendants Aubrey and Johnson filed their Martinez Reports [Doc. Nos. 37 and 39], along with

affidavits and exhibits, and Plaintiff filed his Response [Doc. No. 48], with an affidavit and

exhibits. Defendants Aubrey and Johnson ask the Court to dismiss this action in light of the

evidence submitted by the parties, and the Court finds that this matter is now ripe for resolution

on summary judgment.

    4.  Pursuant to Fed. R. Civ. P. Rule 56( c), the Court may grant summary judgment if the

pleadings, affidavits, and exhibits show there is no genuine issue as to any material fact and that

the moving party is entitled to judgment as a matter of law.  Having submitted  Martinez Reports,

Defendants Johnson and Aubrey are in the position of movants for summary judgment and, as

such, they carry the burden of establishing that there is no genuine issue of material fact. They

may discharge this burden by showing there is an absence of evidence to support the plaintiff's

case. <u>Celotex Corp. v. Catrett</u>,  477 U. S. 317, 325, 106 S. Ct. 2548 (1986). Once the defendants

meet their burden, the burden shifts to the plaintiff to demonstrate a genuine issue for trial on a

material matter. <u>Bacchus Indus. Inc v. Arvin Indus. Inc.</u>, 939 F. 2d 887, 891 (10th Cir. 1991).

The party opposing the motion may not rest on his pleadings, mere argument or contention,

but must set forth specific facts showing there is a genuine issue for trial as to the dispositive

matters for which he carries the burden of proof. Summary judgment is appropriate if there is

insufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict for

that party. Anderson v. Liberty Lobby, 477 U. S. 242, 249, 106 S. Ct. 2505, 2511 (1986);

Celotex Corp., 477 U. S. at 324.

5. The Court has reviewed the entire file, including the Martinez Reports and Plaintiff's

response thereto, and construed the pro se pleadings liberally, holding Plaintiff to a less stringent

standard than that required of a party represented by legal counsel, Haines v Kerner, 404 U. S.

519, 520-21, 92 S. Ct. 594, 596 (1972); Gillihan v. Shillinger, 872 F. 2d 935, 938 (10th Cir.

1989), while bearing in mind that this legal construction does not relieve Plaintiff of his burden of

presenting sufficient facts to state a legal claim. Hall v. Bellmon, 935 F. 2d 1106, 1110 (10th Cir.

1991). Applying these standards, the United States Magistrate Judge recommends that summary

judgment be granted in favor of Defendants Johnson and Aubrey.

## Background

6. On August 16, 2000, Mr. Flores was arrested for DWI in Eddy County. The

Arrest/Booking Report noted that Plaintiff had an outstanding warrant for failure to appear and

contempt of court charges filed in Lincoln County Magistrate Court. (See 8/26/2000

Arrest/Booking Report and 5/3/2000 NMCIC Bench Warrant, attached as exhibits A and B to

Defendant Johnson's Martinez Report, hereafter cited in the form, "JMR Exs. A and B"). On

August 17, 2000, Magistrate Judge Larry Wood accepted Plaintiff's guilty plea on a first offense

DWI aggravated charge and committed him to the Eddy County Detention Center (ECDC) for 90

days with 88 days suspended for a jail term of two days. ( JMR Exh. C).

3

7. At the time of his guilty plea, Plaintiff was on parole from the Texas Parole Board, and was allowed to live in New Mexico under the supervision of the Probation and Parole Office in Chavez County. He alleges that ECDC retained custody of him after his two day sentence at the request of Chavez County on a verbal hold and that ECDC continued its custody based solely on a post-it note attached to his file which stated "hold for Texas per Kay Aubrey, New Mexico Parole Officer." Mr. Flores also alleges that his repeated requests to be taken before a Judge and to be allowed to use the telephone to contact an attorney were ignored by ECDC personnel. He claims that he was not brought for arraignment before a magistrate or district court judge during the 46 days he was confined at ECDC after his two day sentence was completed.

8. The Correction Department Defendant's Response to Court Ordered Martinez Report [Doc. No. 37] includes copies of two Arrest Orders dated August 18, 2000 ( attached as exhibits 8-4 and 8-12 to that report, hereafter cited in the form, "CCMR Exs. 8-4 and 8-12"). Arrest Order, number 5A-00-131 states that "[t]he above named offender is under the supervision of the New Mexico Probation Division of the Corrections Department. The below signed officer has reason to believe that the offender has violated the conditions of his parole in that the offender has driven while intoxicated." The Arrest Order goes on to explain that detention was necessary because Plaintiff posed a risk to the public and was at risk of absconding. (CCMR Ex. 8-2). was served on Plaintiff on September 29, 2000.

9. Defendant Aubrey, Plaintiff's probation officer, called the jail to place a "verbal hold" on Mr. Flores on August 17, 2000. (CCMR Ex. 7-1) She obtained Arrest Order 5A-00-131 and notified the Texas Interstate Compact authorities that Plaintiff had violated his parole one day later. (CCMR Exs. 7-1, 8-4, 8-5). Mr. Flores was held at ECDC pending a decision by the state

4

of Texas.  (CCMR Ex. 7.1)

    10.  On August 25, 2000, Mr. Flores was transported to Lincoln County on the Bench Warrant issued May 3, 2000 by Judge William Butts for failure to appear on a charge of driving with a suspended license in Lincoln County. (JMR Ex. B) He appeared before a judge on those charges.

    11.  On August 31, 2000, while still confined in Lincoln County, Mr. Flores had a preliminary parole revocation hearing.  The hearing officer determined that there was probable cause to find that Mr. Flores had violated his parole. Preliminary Parole Revocation Hearing Report of Facts, Conclusions and Recommendation, JMR 031-034.

    12.  On September 1, 2000, parole officer Alfred Medina inquired whether it would be possible for ECDC to hold Plaintiff for Chavez County. Upon being advised ECDC had space in the detention center for Plaintiff, Mr. Medina returned Mr. Flores to ECDC, along with the August 18, 2000 Arrest Order.  Affidavit of Shawn Funk at 2.

    13.  Information regarding the outcome of the preliminary parole revocation hearing was forwarded to the Texas Board of Pardons and Paroles on September 5, 2000. (CCMR Ex. 8-7). On September 18, 2000, the Texas Department of Warrants Section requested extradition of Plaintiff. (CCMR Ex. 8-9). According to Defendant Aubrey, she issued the second arrest and hold order, 5A-00-149, on September 22, 2000 pending receipt of the Texas warrant, however, as previously mentioned, this document is also dated August 18, 2000.  (CCMR Ex. 8-12)

    14.  Plaintiff sought habeas corpus relief and a hearing was held by State District Judge James Schuler on September 28, 2000. Defendant Johnson appeared and informed the court that she had just received notice of the hearing that morning and had not yet consulted counsel.

5

Judge Schuler instructed Ms. Johnson to speak to an attorney and took a short recess. Defendant Johnson returned, accompanied by an attorney, Denise Madrid Boyea. The Court briefly questioned Ms. Boyea, but Defendant Johnson was not questioned regarding the reason for the Plaintiff's incarceration at ECDC. (JMR, Transcript and tape of hearing). Judge Schuler released Plaintiff immediately following the hearing stating, "I don't think the people of Eddy County need to pay for housing a Texas prisoner if the Texans aren't interested." Id. at 0026.

15. A second warrant for parole violation was issued, and Plaintiff was rearrested the following day. That arrest and hold order was cancelled following receipt of the "Blue Warrant" from Texas instructing ECDC to hold Mr. Flores pending his transfer to Texas authorities. (CCMR Ex. 8-11) Mr. Flores was subsequently transported to Texas for a final hearing on his parole violation and was confined in a Texas prison.

16. As required, the Court reads the pro se complaint liberally. Haines v. Kerner, 404 U. S. 519, 520, 92 S. Ct. 594, 596 (1972); Hall v. Bellmon, 935 F. 2d 1106, 1110 (10th Cir. 1991). Under such a reading, Plaintiff's allegations amount to claims that he was falsely imprisoned and denied access to the court and that his due process rights were violated.

### False Imprisonment

17. In order to establish a claim for false imprisonment under Section 1983, Plaintiff must allege and show that the Defendant government officials acted with deliberate or reckless intent to falsely imprison the plaintiff. Romero v. Fay, 45 F. 3d 1472, 1480 (10th Cir. 1995). In New Mexico, a "jail administrator is obligated by law to keep the arrested person in custody until further steps, as provided by law, are taken to obtain the prisoners liberty, and [ a] ny jailer who deliberately and knowingly releases a prisoner without an order of release . . . is guilty of a

6

misdemeanor and shall be removed from office." N. M. S. A. § 33-3-12. It is undisputed that no

order of release was issued by a court until September 28, 2000.

    18. Flores argues that Defendant Johnson, as administrator of ECDC, has a duty to

investigate every detainee's contention that he should be released. The Supreme Court rejected

this argument in Baker v. McCollan, 443 U. S. 115, 99 S. Ct. 2695 (1979), holding that the

Constitution does not guarantee that only guilty will be arrested and police and correction

employees may rely on facially valid arrest warrants even in the face of vehement claims of

innocence by reason of mistaken identity or otherwise. In Roa v. City of Bethlehem, 782 F. Supp.

1008 (E. D. Pa. 1991), a pretrial detainee brought a Section 1983 and state tort claims action,

alleging that he had been erroneously arrested and held for thirty days as a result of mistaken

identity. He claimed that an administrative assistant at the county prison violated his

constitutional rights because that employee failed to take decisive action to aid him during his

extradition. The Court rejected the plaintiff's contention and observed that "[e]ven if [the

administrative assistant] had positive proof that Plaintiff's claim was accurate, he had no authority

to release him from custody. At most, he could have contacted court officials to alert them of the

error. He could not have released him without a court order." See also Duffy v. County of Bucks,

7 F. Supp. 2nd 567, 577 (E. D. Pa. 1998)( no procedural due process violation because the

correctional officers had no authority to disregard the bench warrant and release [defendant]

because it is up to the judicial system to decide whether a person is guilty or not.). Defendant

Johnson argues that she was also bound by provisions of law to hold Mr. Flores and that she

therefore did not violate Plaintiff's constitutional rights by holding him.

    19. Once the moving party meets its burden, the party opposing the motion must come

7

forward with specific facts, supported by admissible evidence, which demonstrates the existence

of a genuine issue for trial. <u>Anderson</u>, 477 U. S. at 249. Plaintiff's attempt to meet that burden

includes several unsubstantiated claims which are contradicted by exhibits to the <u>Martinez</u> reports.

    20. Mr. Flores alleges that Defendant Johnson testified in his state habeas proceeding that

she did not know the reason Plaintiff was detained. Plaintiff claims that Johnson stated "there was

no arrest order, no blue warrant, no white warrant, nothing." Plaintiff alleges that Judge Shuler

then asked why Plaintiff was held in custody and that Defendant Johnson stated that "there was a

Post-em note in Plaintiffs file which said hold for Texas per Kay Aubrey, New Mexico Parole

Officer."

    21. As noted above, Defendant Johnson never testified. Although it is possible that

Plaintiff misidentified Ms. Boyea as Ms. Johnson, the transcript of the hearing includes no

statements by Ms. Boyea bearing even a remote relationship to the testimony Plaintiff alleges was

given in the hearing. (JMR 0015-0027).

    22. The documents submitted by Defendant Johnson were accompanied by the affidavit

of ECDC Sergeant Shawn Funk, asserting his personal knowledge and attesting that he had

conducted a review of all ECDC records  related to the incarceration and detention of the

Plaintiff.  No "hold for Texas" note was found in Plaintiff's ECDC  inmate file.  (JMR 001-005)

    23. Plaintiff requested  reading glasses and a laundry bag during his confinement at

ECDC, but filed no written complaints that he was being detained illegally.  (JMR Inmate Request

Forms at 0035-0036.) He has not produced any evidence that he, or anyone on his behalf, made

the repeated requests or demands for his release he alleges or that he filed any grievance relating

to that claim.

24.  Plaintiff's claim that Defendants are lying, without more, is insufficient to avoid summary judgment. Plaintiff has not shown that the Defendant Johnson acted with deliberate or reckless intent to falsely imprison the plaintiff. Romero v. Fay, 45 F. 3d 1472, 1480 (10th Cir. 1995).  Defendant Johnson had a legal obligation to hold Flores at ECDC until receiving a court order releasing him from custody. When such an order was issued on September 28, 2000, Plaintiff was promptly released.

25.  Meanwhile, Texas had requested that a pre-revocation warrant be issued. (JMR Ex. 8.8).  Arrest Order (number 5A-00-149) was issued by the APO, commanding the Roswell Police Department to arrest Flores, and  stating that "[t]he above named offender is under the supervision of the New Mexico Probation Division of the Corrections Department. The below signed officer has reason to believe that the offender has violated his parole." It stated that Flores' detention was necessary because he posed a risk to himself and the public, had committed multiple probation violations and  was at risk of absconding.  (CCMR Ex. 8-12).   Pursuant to this order, Flores was arrested on September 29, 2000 and subsequently transferred back to ECDC.  Flores was still in custody at ECDC on October 2, 2000,  when Texas issued a formal arrest warrant (CCMR Ex. 8-8).

26.  The APO Arrest Orders, the Lincoln County Bench Warrant and the Texas Arrest Warrant were all facially valid. Even if they had been erroneously entered (which does not appear to be the case), Defendant Johnson would be entitled to immunity for her actions in detaining Flores pursuant to these warrants and orders. Simple fairness requires that state officers not be called upon to answer for the legality of decisions which they are powerless to control. Turney v. O'Toole,  898 F. 2d 1470, 1473 (10th Cir. 1990). See also, Valdez v. City and County of Denver,

9

878 F. 2d 1285, 1289 (10th Cir. 1989), and <u>Henry v. Farmer City State Bank</u>, 808 F. 2d 1228,

1238 (7th Cir. 1986). No one in New Mexico, including Defendant Johnson, had any authority to

challenge the Texas decision to retake Plaintiff. As was true of his first detention, Defendant

Johnson was charged with the legal duty of holding Mr. Flores until ECDC received a court order

releasing him. Plaintiff has failed to raise an issue of fact as to Defendant Johnson's actions in

fulfilling this duty and summary judgment is therefore appropriate on this claim.

### Denial of Access to Counsel and the Court

27. Mr. Flores also claims that "my repeated requests to Defendant Johnson's jailers...to

be taken before a Judge regarding my unlawful detention were completely ignored as were my

repeated requests to be allowed to use the telephone to contact an attorney." (Complaint at 5) He

alleges that he did not appear before a judge during the 46 days he was held at ECDC following

the completion of his DWI sentence. <u>Id.</u>

28. Mr. Flores appeared before a judge on the Lincoln County warrant and also had a

parole revocation hearing during the time he claims that he was denied access to the Court. (JMR

ex. B, G, CCMR ex. 7-1, 8-6, 8-7). During his detention, Mr. Flores was allowed unsupervised

access to a telephone which could have been used to contact an attorney. (JMR at 003, Affidavit

of Shawn Funk at 4). Plaintiff's version of the facts is contradicted by the record. Defendants are

entitled to summary judgment in their favor on this claim.

### Due Process

29. Plaintiff's claims against Defendant Aubrey are somewhat vague, but it appears to the

Court that Mr. Flores contends that Defendant Aubrey was responsible for his probation being

revoked without due process. At the time of his arrest, Mr. Flores was under the supervision of

the New Mexico Probation Division of the Corrections Department ( APO).

30.  In Morrissey v.Brewer, 408 U. S. 471 (1972), the Supreme Court held that a parolee

has a protected liberty interest in retaining his conditional freedom. The Court extended some due

process protections to parole and probation revocation proceedings but also made it clear that

such proceedings are not part of a criminal prosecution and that the full panoply of rights afforded

a defendant in a criminal trial do not apply.  Procedural due process in probation revocation

proceedings requires: (1) a retrospective factual question whether the probationer has violated a

condition of probation; and (2) a discretionary determination by the sentencing judge whether

violation of a condition warrants revocation of probation. Black v.Romano, 471 U. S. 606, 611,

105 S. Ct. 2254, 2257 (1985). Plaintiff received a prompt preliminary hearing in New Mexico

and was transported to Texas for a final hearing on his parole violation.

31.  In 1988, Plaintiff received a  20 year sentence for each of two charges of indecency

with a child (sentences to run concurrently) in Texas.  By 1995, he was on parole, living in New

Mexico and being supervised by the  New Mexico APO.  (CCMR ex. 8-5).  The arrest orders

issued by the New Mexico APO and the warrant issued by Texas resulted from  Plaintiff's alleged

violation of the conditions of parole  imposed  by the state of Texas.

32.  New Mexico and Texas were signatories to an interstate compact for the supervision

of parolees and probationers, as provided in N. M. S. A. § 31-5-1 (now repealed, but in effect at

all times relevant to this lawsuit). Arrest Order  No. 5A-00-131 issued on August 18, 2000 and

Arrest Order 5A-00-149 which was served on Plaintiff September 29, 2000,  were issued by the

APO pursuant to  N. M. S. A. § 31-21-15( A)( 3) which provides:

At any time during probation . . . the director [i. e., the director of the field services

11

division of the corrections department or any employee designated by him] may arrest a
probationer without warrant or may deputize any officer with power of arrest to do so by giving
him a written statement setting forth that the probationer has, in the judgment of the director,
violated the conditions of his release. The written statement, delivered with the probationer by the
arresting officer to the official in charge of a county jail or other place of detention, is sufficient
warrant for the detention of the probationer.

33.  Defendant Aubrey's August 18, 2000,  Report of Parole Violation states that in

addition to pleading guilty to DWI, at the time of his arrest Plaintiff was found to be in possession

of a vehicle taken without the owner's permission, 69 unopened beers and 12 unopened bottles of

liquor.  Her conclusion was that "Flores should be considered a very real threat to our community

as he has resumed his use of intoxicants.  It should be remembered that he has blamed all of his

sexual molestations of young girls on his alcohol abuse.  This, as well as Flores' continued denials

of any alcohol related or sexual difficulties, leads writer to recommend Flores be returned to the

*Texas Department of Corrections for the remainder of his sentence.*"  Petitioner was in clear

violation of his conditions of release and it was the parole officer's duty to notify Texas and to

hold Mr. Flores pending a decision by that state regarding revocation of his parole.  Arrest Order

5A-00-131 was obtained by Ms. Aubrey the same day (CCMR Ex. 7-1, 8-4), however, Plaintiff's

detention under these circumstances pending a preliminary revocation hearing would have been

proper even without the warrant under New Mexico law.  See  N.M. Stat. Ann.§§ Sec. 31-12-14

(A) and (B).

34.  Issuance of the Texas arrest warrant was also done pursuant to statutory authority.

The Uniform Act for Out-of- State Parolee Supervision (which, as noted above, was in effect at

all times pertinent hereto) provides that a sending state (in this case, Texas) may permit a person

*on probation in that state, to reside in a receiving state (here, New Mexico) while on probation,*

under certain conditions and subject to assumption by the receiving state of all duties of supervision. Under this statute, and pursuant to the interstate compact signed by Texas and New Mexico (CCMR Ex. 7.4), Texas authorities were authorized to enter New Mexico at any time to apprehend and retake Flores, and "[f]or that purpose no formalities will be required other than establishing the authority of the officer and the identity of the person to be retaken. All legal requirements to obtain extradition of fugitives from justice are hereby expressly waived on the part of states party hereto, as to such persons. The decision of the sending state to retake a person on probation or parole shall be conclusive upon and not reviewable within the receiving state; provided, however, that if at the time when a state seeks to retake a probationer or parolee there should be pending against him within the receiving state any criminal charge, or he should be suspected of having committed within such state a criminal offense, he shall not be retaken without the consent of the receiving state until discharged from prosecution or from imprisonment for such offense." N. M. S. A. § 31-5-1( C)

35.  On this record Plaintiff cannot demonstrate a violation of his Fourteenth Amendment rights under the Due Process Clause.  Defendant Aubrey's supervision of Plaintiff following his release from prison, and her involvement in Plaintiff's arrest, detention, and transportation from New Mexico to Texas for his probation revocation hearing was authorized by New Mexico and Texas law.   The procedures afforded Plaintiff in depriving him of his freedom were constitutionally sufficient and the record includes no evidence that Plaintiff's due process rights were violated.  Summary judgment is appropriate on this issue.

## Recommendation

The undersigned United States Magistrate Judge recommends that summary judgment

be GRANTED to Defendants Aubrey and Johnson and that Plaintiff's civil rights complaint be DISMISSED WITH PREJUDICE. Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommendations with the Clerk of the United States District Court, 333 Lomas Blvd. NW, Albuquerque, NM 87102. Any party hereto must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

Robert H. Scott    9-13-04
ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE

14